UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                    :
UNITED STATES OF AMERICA,      :      CASE NO. 5:06-CR-346
                                                    :
           Plaintiff,                        :
                                                    :
vs.                                             :
                                                    :      [Resolving Doc. No. 3]
RAYMOND L. GRENIER and     :
DELTA EQUITY SERVICES CORP., :
                                                    :
           Defendants.                     :
                                                    :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Defendants Raymond L. Grenier ("Grenier") and Delta Equity Services Corp. ("Delta Equity") move the Court to dismiss Plaintiff's indictment against them as untimely under Title 18 U.S.C. Section 3282. With the indictment, the United States charges Defendants with making false statements to the Securities and Exchange Commission ("SEC") and with aiding and abetting the making of false statements in violation of 18 U.S.C. Sections 2 and 1001. [Doc. 3.] Plaintiff opposes Defendants' motion. [Doc. 14.] For the reasons set forth below, the Court **GRANTS** Defendants' motion to dismiss.

I. Background

On July 11, 2006, the grand jury returned a one count indictment charging Delta Services and its President, Raymond Grenier, with making false statements to the SEC. [Doc. 1.] The indictment alleges:

> From in or about 1997, the exact date being unknown, through on or about July 13, 2001, in the Northern District of Ohio, and elsewhere, the defendants RAYMOND

-1-

Case No. 5:06-CR-0346
Gwin, J.

> L. GRENIER, and DELTA EQUITY SERVICES CORP., did knowingly and willfully conceal and cover up, and cause to be concealed and covered up, by tricks, schemes, and devices a material fact, and did knowingly and willfully make, use, and cause others to make and use, a false writing, that is, a letter to the United States Securities and Exchange Commission, knowing that it contained the following material misstatements, which were fraudulent in the manners described below, in a matter within the jurisdiction of the Executive Branch of the government of the United States . . ..

[Doc. 1.] The indictment then lists ten specific examples of allegedly materially fraudulent statements made by Grenier and Delta Equity to the SEC. *Id.*

The "false writing" referred to in the indictment is an eighteen-page *Wells* submission[1] and settlement proposal signed by Defendants' counsel. On July 10, 2001, Defendants transmitted via facsimile a copy of the document to the SEC. [Doc. 3.] On July 11, 2001, Defendants delivered the hard-copy of the documents to the SEC. *Id.* The fax and the hard-copy differ slightly, in that the latter includes Grenier's personally-signed waiver of rights relating to the settlement proposal. [Tr. Pretrial Hearing Aug. 28, 2006.] According to Defendants, Grenier undertook this waiver because, under SEC regulations, any offer of settlement "shall be signed by the person making the offer, not by counsel." *Id. See also* 17 C.F.R. § 201.240(b). The July 10, 2001 fax did not include Grenier's waiver.

A copy of Grenier's waiver is not on the ECF docket. Defendants suggest that the SEC received the hard-copy of the *Wells* submission, settlement proposal, and waiver on July 11, 2001. [Tr. Pretrial Hearing Aug. 28, 2006.] The SEC offers nothing suggesting otherwise. Documents

---

[1] After a prospective defendant is given notice of the agency's positions regarding SEC enforcement actions, a *Wells* letter gives the potential defendant an opportunity to respond to the staff allegations with a written statement to the Commission. Under the *Wells* procedure, targets "may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation." *Wells* submissions typically go to the Regional Administrator of the SEC with a copy to the staff members conducting the investigation. 17 C.F.R. § 202.5(c) (2006).

Case No. 5:06-CR-0346
Gwin, J.

placed on the ECF docket by Defendants imply that the SEC received the *Wells* submission, settlement proposal, and waiver before February 21, 2002, but the docket does not show when. [Doc. 3.]

Defendants seek to have the indictment dismissed as time-barred. [Doc. 3.] They argue that the eighteen-page document "sent by facsimile transmission and overnight mail on July 10, 2001" includes the false statements that are the basis of the charges under 18 U.S.C. Sections 1001 and 2. [Doc. 3.] Defendants characterize the entire July 10, 2001 writing as a *Wells* submission and dismiss its relevance as a settlement proposal. [Docs. 3, 23.] Because the grand jury returned the indictment one day outside of the five-year period following the receipt of the July 10, 2001, facsimile, Defendants say that the Court must dismiss the Government's indictment. *Id.*

The Government opposes Defendants' motion and presents several alternative theories of guilt. [Docs. 14, 17, 24.] With the indictment, the Government says that Defendants made false statements "through on or about July 13, 2001." [Doc. 1.] The Government characterizes the July 10, 2001 document as a combination *Wells* submission and settlement proposal. [Tr. Pretrial Hearing Aug. 28, 2006.] The Government also says that Defendants did not make their false statements until July 11, 2006, when the SEC physically received Defendants' combined *Wells* submission and settlement proposal. [Docs. 14, 17, 24.] Finally, the Government argues that, "under general contractual principles, there could not have been an agreement between the SEC and the defendants without an offer and acceptance. And no acceptance could have taken place without the receipt of the manually signed offer of the defendants." [Doc. 24.]

## II. Legal Standard

Under the Federal Rules of Civil Procedure, "[a] party may raise by pretrial motion any

-3-

Case No. 5:06-CR-0346
Gwin, J.

defense, objection, or request that the court can determine without a trial of the general issue." FED. R. CIV. P. 12(b)(2). A pretrial motion to dismiss is "'capable of determination' before trial if it involves questions of law instead of questions of fact on the merits of criminal liability." *United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997). Pretrial motions may address issues such as compliance with the statutes of limitations. *Id.* (quoting *United States v. Smith*, 866 F.2d 1092, 1096 n.3 (9th Cir. 1989)). The Federal Rules allow district courts to make preliminary findings of fact necessary to decide questions of law presented by pretrial motions so long as the district court's conclusions do not invade the province of the ultimate fact-finder. *Id.*

Here, the United States charges Defendants Grenier and Delta Equity with making false statements to a government agency. Title 18, Section 1001 of the United States Code provides:

> whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully –
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2) makes any materially false, fictitious, or fraudulent statement or representation;
> or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; shall be fined [or imprisoned].

18 U.S.C. § 1001 (2006).

"[F]ive elements comprise the section 1001 offense: (1) the defendant made a statement; (2) the statement is false or fraudulent; (3) the statement is material; (4) the defendant made the statement knowingly and willfully; and (5) the statement pertained to an activity within the jurisdiction of a federal agency." *United States v. Steele*, 933 F.2d 1313, 1318-19 (6th Cir. 1991) (citing *United States v. Chandler*, 752 F.2d 1148, 1150 (6th Cir.1985)).

Title 18 U.S.C. Section 3282(a), establishes a five-year statute of limitations for non-capital offenses, including Section 1001 violations. Section 3282, provides, in part:

-4-

Case No. 5:06-CR-0346
Gwin, J.

> [e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

18 U.S.C. § 3282(a) (2006).

"The statute of limitations begins to run when each element of the crime has occurred and the crime is complete." *United States v. Crossley*, 224 F.3d 847, 859 (6th Cir.2000) (citing *Toussie v. United States*, 397 U.S. 112, 115 (1970) and *United States v. Lutz*, 154 F.3d 581, 586 (6th Cir.1998)). *See also United States v. Cruz*, 2006 U.S. Dist. LEXIS 59779 (E.D. Mich. Aug. 24, 2006), at *6. A crime is not "complete" under Title 18 U.S.C. Section 1001 "unless a false statement is made regarding a matter within the jurisdiction of a federal agency." *Lutz*, 154 F.3d at 586 (quoting *United States v. Smith*, 740 F.2d 734, 737 (9th Cir. 1984)). "A matter is within the jurisdiction of a federal agency for purposes of § 1001 when the agency has the power to exercise authority in a particular situation." *Id.* (citing *United States v. Rodgers*, 466 U.S. 475, 479 (1984)). *See also Cruz*, 2006 U.S. Dist. LEXIS 59779, at *7.

As noted by the Supreme Court, Section 1001 does not define "jurisdiction." *Rodgers*, 466 U.S. at 479. Using the most natural reading of the statute, jurisdiction "covers all matters confided to authority of an agency or department." *Id.* Within the context of Section 1001, a court should not read "jurisdiction in a 'narrow or technical' sense." *Id.* (citing *Bryson v. United States*, 396 U.S. 64 (1969)). Instead, "the word 'jurisdiction' as used in the statute must mean simply the power to act upon information when it is received." *Id.* (citing *United States v. Adler*, 380 F.2d 917, 922 (2d Cir.), *cert. denied*, 389 U.S. 1006 (1967)).

### III.  Analysis

In this case, the grand jury returned the indictment on July 11, 2006. Consistent with the

Case No. 5:06-CR-0346
Gwin, J.

applicable five-year statute of limitations, the Government must prove that Defendants' offense occurred on or after July 11, 2001. Defendants argue that, if they committed a crime, they did so with the facsimile transmission of the *Wells* statement and settlement proposal on July 10, 2001. As a result, Defendants say that the Government returned the indictment one day beyond the statute of limitations.

Responding, the Government argues that the SEC did not have jurisdiction over the *Wells* submission and settlement proposal until July 11, 2001 or thereafter, when the agency received the original documents and Grenier's personally-signed waiver. As a result, Defendants did not complete their crime until July 11, 2001, and, consequently, the indictment is timely.

Thus, the issue before the Court is whether Defendants completed the act of providing false statements on July 10, 2001, when they faxed the *Wells* submission and settlement proposal to the SEC, or on July 11, 2001, when the agency received the hard-copy originals. In deciding whether Defendants completed the act of making false statements, this Court must decide whether the July 10, 2001 fax was within the SEC's jurisdiction. The Court also considers whether the July 10, 2001 facsimile was material to the SEC before the agency's receipt of Grenier's personally-signed waiver at some point after July 10, 2001.

At its core, the parties' dispute is whether the July 10, 2001 *Wells* submission was sufficient to bring this matter within the jurisdiction of the SEC. The United States says that SEC regulations require a personally-signed submission before the agency could consider the Defendants' *Wells* submission as a settlement proposal. Under SEC regulations:

> [f]iling with the Commission may be made by facsimile transmission if the party also contemporaneously transmits to the Commission a non-facsimile original with a manual signature. However, any person filing with the Commission by facsimile transmission will be responsible for assuring that the Commission receives a

-6-

Case No. 5:06-CR-0346
Gwin, J.

complete and legible filing within the time limit set for such filing.

17 C.F.R. § 201.151.

Responding, Defendants argue that, under Section 1001, the offense is complete and the statute begins to run either when the allegedly false statements are made, or when the statements are submitted to the federal agency; not when the agency receives or relies upon such statements. In this case, Defendants say that they made the statements either when they sent the fax or when the SEC received the facsimile, both occurring on July 10, 2001.  As a result, the SEC's jurisdiction attached on this date.

As support for their differing interpretations of the facts, both parties rely on *United States v. Smith*, 740 F. 2d 734 (9th Cir. 1984) and *United States v. Lutz*, 154 F.3d 581 (6th Cir. 1988). In *Lutz*, the Sixth Circuit examined whether a false statement came within the jurisdiction of the United States' Department of Housing and Urban Development ("HUD") where a loan originator submitted reports that falsely stated that she had in-person meetings with loan applicants. *Lutz*, 154 F.3d at 586.  The policies of HUD required that the loan originator first give her reports to lending institutions for underwriting before subsequently transmitting them to the agency.  *Id.*  The Court found the false statements in the reports came within HUD's jurisdiction when the loan originator submitted the reports to HUD, not to the lending institution. *Id.*  According to the Sixth Circuit, "[a] matter is within the jurisdiction of a federal agency for purposes of § 1001 when the agency has the power to exercise authority in a particular situation." *Id*. (citing *United States v. Rodgers*, 466 U.S. 475, 479 (1984)).  In finding that the loan originator's initial false reports to the underwriting lending institutions did not establish HUD's jurisdiction, the Sixth Circuit reasoned that "HUD had no authority over the lending institution at this point with regard to whether or not the institution

-7-

Case No. 5:06-CR-0346
Gwin, J.

would accept the loan. Therefore, the matter was not within HUD's jurisdiction, and thus the crime was not complete." *Id.* at 587.

In deciding *Lutz*, the Sixth Circuit generally followed the reasoning in *United States v. Smith*, 740 F.2d 734 (9th Cir. 1984). As in *Lutz*, the *Smith* Court rejected the Government's argument that a federal agency must actually receive false statements before the Section 1001 offense is complete. *Smith*, 740 F.2d at 736. Instead, the Ninth Circuit found "[t]he offense is complete when the false statement is submitted." *Id.* Thus, in *Smith*, the Section 1001 crime was complete when a third-person pharmaceutical company "mailed" a false report to the FDA. *Id.*

Here, the United States correctly argues that Defendants' July 10, 2001 fax to the SEC is both a *Wells* submission and an effort to support a settlement favorable to Delta Equity and Grenier. As the United States asserts, under its own regulations, the SEC could not obtain jurisdiction to consider a settlement offer until it received Grenier's personally-signed waiver, an event which did not occur before July 11, 2001.

However, the July 10, 2001 faxed *Wells* submission is different from and more than a settlement offer. Although it discusses settlement, the submission principally argues that the SEC should not take enforcement action against Defendants: "Delta and Mr. Grenier make the present submission . . . to urge the Philadelphia District Office and the Securities and Exchange Commission not to proceed with any contemplated enforcement action against them . . . ." As a *Wells* submission, it is clear that the SEC had jurisdiction over the document and any false statements it contains. Equally clear, the agency's jurisdiction attached on July 10, 2001, when Defendants faxed a copy of the *Wells* submission to the SEC.

The United States makes no showing that the SEC could not properly consider the July 10,

Case No. 5:06-CR-0346
Gwin, J.

2001 *Wells* submission. Instead, the Government argues that the SEC could not consider any settlement offer that accompanied the *Wells* submission until the agency received Grenier's original waiver. But the *Wells* submission and the settlement offer serve very different purposes. The *Wells* submission acts as a brief to persuade the SEC to forgo enforcement action against Delta Equity and Grenier. In contrast, a settlement proposal offers to bind a party to an agreed compromise. For evidentiary reasons, under its own regulations the SEC could legitimately refuse to consider a settlement offer that does not include an original personally-signed waiver of rights. No similar reason would justify the SEC's refusal to consider a *Wells* submission.

In arguing that the SEC did not have jurisdiction until the agency received Grenier's personally-signed waiver, the United States conflates two issues. When Defendants sent their *Wells* submission to the SEC, they were attempting to influence the agency with regard to a matter within the agency's jurisdiction, i.e. the governmental supervision of registered representatives. Under the Securities Act of 1933 and the Securities Exchange Act of 1934, the SEC regulates broker-dealers and registered representatives. *See* 15 U.S.C. § 78o. Thus, the July 10, 2001 *Wells* submission was within the jurisdiction of the SEC.

Additionally, the July 10, 2001 *Wells* submission was material. The indictment complains that ten statements within both the July 10, 2001 and the July 11, 2001 submissions were false. Nothing added by the July 11, 2001 waiver made the statements any more actionable. While the waiver was necessary for the SEC to consider Defendants' settlement offer, it did not otherwise bar the SEC's consideration of Defendants' false statements contained in their *Wells* submission. Thus, the statements included in the July 10, 2001 facsimile were material.

In summary, the July 10, 2001 *Wells* submission was sufficient to complete the crime of

-9-

Case No. 5:06-CR-0346
Gwin, J.

making a false statement under 18 U.S.C. Section 1001. As alleged by the United States, Defendants knowingly made statements that were false or fraudulent; and were material. The Court finds the statements pertained to an activity within the jurisdiction of the SEC, a federal agency. And the Court finds the statements were made with the facsimile received by the SEC on July 10, 2001. As a result, the applicable five-year statute of limitations began to run on July 10, 2001 and ended on July 10, 2006. Accordingly, the July 11, 2006 grand jury indictment is untimely.

## IV.  Conclusion

For these reasons, the Court **GRANTS** Defendants' motion to dismiss.

IT IS SO ORDERED.


Dated: September 5, 2006                         s/      *James S. Gwin*
                                                 JAMES S. GWIN
                                                 UNITED STATES DISTRICT JUDGE